**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNUM LIFE INSURANCE COMPANY
OF AMERICA, a foreign corporation,**

      **Plaintiff,**

**vs.**                          **Case No. 4:12cv62-RH/CAS**

**PAUL SISK,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This case was initiated in February 2012, pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001-1461 (hereinafter ERISA). Doc. 1. The Complaint alleged that Unum Life Insurance Company (hereinafter Unum) issued a long-term disability policy to Quality Plus Services, Inc., (hereinafter Quality) as part of an employee welfare benefit plan. Doc. 1. Defendant Paul Sisk (hereinafter Sisk) was an employee of Quality, a participant in the benefit plan, and was insured under the disability policy. *Id.* The policy provided that any payment received from the Social Security Administration would reduce the benefit payable under the policy. *Id.* Unum alleged that after Sisk began receiving long-term disability benefits under the policy, Sisk subsequently "became entitled to and was awarded Social Security benefits" which

were backdated.  *Id.*  Unum contends that as a result, Sisk is obligated to repay Unum approximately $76,682.35 which were overpaid benefits in light of the back-dated Social Security benefits.  *Id.*  Unum alleges that Sisk "has failed and continues to refuse to pay Unum for this debt."  *Id.*

Sisk was served and submitted a brief, one sentence "Answer" which stated, "Paul Sisk, without benefit of counsel, does answer in the complaint in this case by generally denying all allegations in [the] complaint."  Doc. 5.  Sisk concluded by indicating he was seeking an attorney to represent him, but no notice of appearance has ever been filed for Sisk.  A Case Management and Initial Scheduling Order was entered on March 21, 2012, advising Defendant Sisk that "he is deemed to be proceeding pro se until a notice of appearance is filed by the retained attorney."  Doc. 6.

The parties filed a joint report of their planning meeting, doc. 11, and Sisk represented himself.  His position, as expressed through the joint report was that he "believes that Unum has filed a false claim based on the amount" Unum claims that Sisk owes.  *Id.* at 3.  At the conclusion of the discovery period, Unum filed a motion for summary judgment, doc. 21, supported by a statement of facts, doc. 22, and supporting evidence, doc. 23.  An Order was entered advising Defendant Sisk of his obligation to respond to the motion pursuant to FED. R. CIV. P. 56 and N.D. Fla. Loc. R. 56.1.  Doc. 26.  A response was due on or before September 26, 2012.  *Id.*  As of this date, Defendant Sisk has not filed any opposition to the summary judgment motion.  For the reasons stated more fully below, Plaintiff's motion for summary judgment, doc. 21, should be granted.

**Summary judgment standard of review**

Plaintiff may move for summary judgment, with or without supporting affidavits, upon all or any part of the claim. Fed. R. Civ. P. 56(a). Summary judgment shall be granted in favor of Plaintiff "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A claimant is entitled to summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate the right to relief, and every one of the defenses asserted legally are insufficient." 10B CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2734 (1983).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Fed. R. Civ. P. 56(c), (e). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236.

Plaintiff submitted a "separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried" as required by N.D. Fla. Loc. R. 56.1.  All material facts set forth in that statement are deemed to be admitted if supported by record evidence as Defendant Sisk has not controverted Unum's statement.  N.D. Fla. Loc. R. 56.1(A).

**Undisputed Evidence**

Unum is a corporation organized under the laws of the state of Maine, and Unum maintains its principal place of business in Portland, Maine.  Doc. 22 at 1.  Unum issued Group Long Term Disability Policy No. 583305-001 to Quality as part of an employee welfare benefit plan (hereinafter Plan) sponsored and maintained by Quality.  Doc. 22, at 1-2; Ex. A (doc. 23-1).  Sisk is a citizen of the state of Florida who, at all relevant times, was an employee of Quality, was a participant in the Plan, and was insured under the policy identified above.   Doc. 23 at 2.  A provision of the Policy provides that "Unum will subtract from your gross disability payment the following deductible sources of income . . . [t]he amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under . . .  the United States Social Security Act."  Doc. 23 at 2-3.  The policy states that "Unum will only subtract deductible sources of income which are payment as a result of the same disability."  *Id.* at 3.

Furthermore, the policy provides that Unum can "recover any overpayments due to . . . your receipt of deductible sources of income."  *Id.*  The policy has a provision which states that "Unum has the right to recover any overpayments due to . . . your receipt of deductible sources of income."  *Id.* at 3.  It requires the beneficiary to

reimburse Unum "in full" and states that Unum "will determine the method by which the repayment is to be made."  *Id.* at 4.

On December 9, 2006, Sisk "became disabled under the terms of the Policy and began receiving long-term disability benefits effective April 23, 2007, after the expiration of the requisite elimination period."  Doc. 23 at 4.[1]  Sisk received a monthly benefit of $3,876.72 per month."  *Id.*  Sisk "executed a Reimbursement Agreement, dated May 26, 2007, wherein he agreed to [sic] 'to pay the Insurer [Unum] any overpayment resulting from [his] receipt of benefits from other sources, as outlined in [the] policy."  *Id.*

"While receiving unreduced, full long-term disability benefits from Unum under the Policy, Sisk submitted a claim with the Social Security Administration for primary disability benefits."  Doc. 23 at 4.  While that application for benefits was pending, "Sisk received unreduced benefits from Unum . . . ."  *Id.*  Sisk was eventually awarded Social Security benefits on July 7, 2010.  *Id.*  The benefit award was "backdated to June 2007, in the amount of $2,188.90 per month for the period June-December 2007; $2,239.20 per month for the period December 2007 - December 2008; and $2,369 for the period December 2008 - December 2009, subject to any applicable deductions and rounding."  *Id.* at 4-5; *see* doc. 23-3 (Ex. C).  "Sisk received a lump-sum payment from the Social Security Administration in the amount of $79,005.50, representing the back-dated primary Social Security benefit award beginning July 2010."  Doc. 23 at 4.  After the lump sum payment, Sisk would "receive $2,258.00 on or about the third Wednesday of each month."  Doc. 23-3 (Ex. C).

---

[1] The "elimination period is 90 days."  Doc. 23-1 at 15.  Payments under the policy would continue for a maximum of 5 years for a claimant who was less than 65 years of age at the time of the disability.  Doc. 23-1 at 4, 20.

Sisk was obligated to inform Unum of the award of Social Security benefits so his policy benefits could be adjusted by virtue of the Reimbursement Agreement. *Id.* at 5.

In that Agreement, signed by Sisk on May 26, 2007, he agreed to the following:

> Please pay me the disability benefit with no reduction for amounts received by other sources until a final determination of my eligibility to receive those benefits is made. Understand that this may result in an overpayment by the Insurer. I agree to notify the Insurer within 48 hours of receiving notice of any and all decisions, to supply the Insurer with a copy of the final decision, and to repay an overpayment incurred as a result of receiving any other benefits from those sources specified in the policy.

Doc. 23-2 (Ex. B). The Agreement contains another statement, in bold type, that says:

> By selecting Option A, I understand that the Insurer has agreed to pay me an unreduced benefit based upon my written promise herein to pay the Insurer any overpayment resulting from my receipt of benefits from other sources, as outlined in my policy. I agree to reimburse the Insurer any such overpayment within thirty (30) days of my receipt of such funds.

*Id.* Doc. 23-2 (Ex. B). Option B, which Sisk did not choose, provided for a reduced monthly benefit amount based on an estimate of benefits Sisk would "receive from other sources as described in [the] policy." *Id.*

Unum has provided a recalculation statement which shows that between March 9, 2007,[2] and September 8, 2010, Sisk received total payments of $162,822.24, but should have only been paid $82,906.89 in light of the Social Security benefits awarded to him. Doc. 23-4 (Ex. D). That resulted in an overpayment of $76,682.35. *Id.* at 1-3.

On or about September 23, 2010, Unum learned of the Social Security award and notified Sisk that those benefits were a deductible source of income under the policy and he had incurred an overpayment debt to Unum of $76,682.35. Doc. 23 at 5.

---

[2] Sisk's benefits under the policy were awarded on April 23, 2007, but it appears that the benefits were calculated to begin on March 9, 2007, which is 90 days after the onset of disability, December 9, 2006, pursuant to the elimination period.

Resolution could not be reached between the parties, so Unum unilaterally reduced the monthly benefit payable under the policy to zero. *Id.* The declaration of Gudrun Cushman demonstrates that Unum thereby recouped "a monthly amount of $1,688.72 toward this overpayment debt." Doc. 23 at 5. Despite Unum's repeated demands for reimbursement, Sisk failed to reimburse Unum. *Id.* at 5-6. Sisk "is indebted to Unum in the current amount of $47,974.11," which represents the difference between the overpayment amount and funds saved which would have continued to pay a monthly benefit to Sisk until March 8, 2012, the maximum duration of the policy. *Id.* at 6.

**Analysis**

Pursuant to § 502(a)(3)(B) of ERISA, a fiduciary may bring a civil action to obtain "appropriate equitable relief" such as reimbursement for overpayments. Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006); White v. Coca-Cola Co., 542 F.3d 848, 858 (11th Cir. 2008); Northcutt v. General Motors Hourly-Rate Employees Pension Plan, 467 F.3d 1031, 1035-36 (7th Cir. 2006) (quoting 29 U.S.C. § 1132(a)). Case law has established "that to invoke the authority to sue under § 1132(a)(3)(B), a fiduciary must be seeking a category of relief that would have typically been available in equity and not simply an award of compensatory damages." Mertens v. Hewitt Assocs., 508 U.S. 248, 255–56, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), *cited in* Gilchrest v. Unum Life Ins. Co., 255 Fed.Appx. 38, 44, 2007 WL 3037239, at *6 (6th Cir. 2007). "The Supreme Court recently held that an insurance company may bring an action under ERISA to seek restitution for amounts paid for medical expenses where the beneficiaries have received compensation from third parties for the same expenses." Sereboff, 547 U.S. at 360, *explained in* Unum Life Ins.

Co. v. Harper, 2008 WL 1990338, at *2 (M.D.Ga. May 2, 2008).  "Applying Sereboff, the Eleventh Circuit Court of Appeals has held that an action seeks equitable relief under ERISA when the plaintiff (1) requires that reimbursement come from an identifiable fund, and (2) limits recovery to a particular share of the fund."  Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir. 2006).

An insurer is entitled to restitution for overpayments due to the beneficiary's receipt of SSDI benefits.  Dillards, Inc. v. Liberty Life Assur. Co., 456 F.3d 894, 901 (8th Cir. 2006) (noting the case was analogous to Sereboff which determined that enforcement of a reimbursement provision was an equitable remedy), *cited in* Harper 2008 WL 1990338, at *2; *see also* Northcutt, 467 F.3d at 1038 (finding that GM had ongoing contractual obligations and was permitted by the language of the contract to suspend future benefits and apply them to the debt owed by the plan beneficiary); In re Radcliffe, 563 F.3d 627, 632 (7th Cir. 2009) (explaining Northcutt and stating that a plan has a right to recover an overpayment of benefits which duplicate social security benefits granted for the same disability "by withholding future payments").  Courts have held that where a plan's overpayment "provision asserts a right to recover from a specific fund distinct from [a beneficiary's] general assets—the fund being the overpayments themselves," the plan is entitled to recover "all overpayments due to the receipt of Social Security benefits, but not to exceed the amount of benefits paid." Gilchrest, 255 Fed.Appx. 38, 45-46, 2007 WL 3037239, at *8.  That is true notwithstanding that the funds might have been commingled with Social Security disability benefit payments that are protected from levy or attachment under 42 U.S.C § 407(a).  Smith v. Accenture United States Grp. Long-term Disability Ins. Plan, 2006

WL 2644957 (N.D.Ill., Sept. 13, 2006), *cited in* Harper, 2008 WL 1990338, at *3; Funk v. CIGNA Grp. Ins., 648 F.3d 182, 195 (C.A.3 (N.J.),2011) (holding that "[b]ecause the Plan and Reimbursement Agreements at issue here likewise specify the receipt of Social Security benefits as the particular fund from which reimbursement is to be made, they give rise to an equitable lien by agreement over those Social Security funds that are overpayments under the Plan."). However, recovery must be limited to "a specifically identifiable fund (the overpayments themselves)" and not to future Social Security benefits because a lien may not be placed on Social Security benefits. Hall v. Liberty Life Assur. Co., 595 F.3d 270, 275 (6th Cir. 2010).

In this case, Unum is entitled under ERISA to recover its overpayments to Sisk as a result of his receipt of Social Security disability payments. By the Affidavit of Gudrun Cushman, Unum has shown that its overpayments total $47,974.11. Based on the undisputed evidence presented, Unum is entitled to an award in that amount.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment, doc. 21, be **GRANTED** and the judgment entered provide that Defendant is to make restitution to Unum of the $47,974.11 in overpayments under the policy.

**IN CHAMBERS** at Tallahassee, Florida, on December 6, 2012.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**